UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| XOCHITL P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:24-CV-314-ACL |
| | ) | |
| LELAND DUDEK, | ) | |
| Acting Commissioner of Social Security | ) | |
| Administration,[2] | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM</u>**

Plaintiff Xochitl P. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of her application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because she

was capable of performing past relevant work.   This matter is pending before the undersigned

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the Judicial
Conference of the United States issued a memorandum recommending that courts adopt a local
practice of using only the first name and last initial of any non-government party in Social
Security opinions.

[2] Leland Dudek is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit.
No further action need be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

## I. Procedural History

Plaintiff filed her application for benefits on May 9, 2021. (Tr. 542-44.) She claimed she became unable to work on December 31, 2014,[3] due to lupus, insomnia, obstructive sleep apnea, deep venous thrombosis, a pacemaker, vitamin D deficiency, vitamin B12 deficiency, esophageal reflux, allergic rhinitis, and migraines. (Tr. 619.) Plaintiff was 52 years of age on her amended alleged onset of disability date. (Tr. 30.) Her application was denied initially and on reconsideration. (Tr. 439-42, 449-58.) On June 15, 2023, after a hearing, an ALJ found that Plaintiff was not disabled. (Tr. 18-31.) The Appeals Council denied Plaintiff's claim for review. (Tr. 1-4.) Thus, the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff first argues that the "RFC is not supported by substantial evidence." (Doc. 20 at 3.) She next argues that the ALJ "failed to properly consider the medical opinions." *Id.* at 6. Plaintiff also contends that the ALJ "failed to properly consider fibromyalgia." *Id.* at 10. Finally, Plaintiff argues that the "decision lacks a proper pain evaluation." *Id.* at 11.

---

[3]Plaintiff amended her alleged onset date to August 16, 2018—the day after the denial of a prior application—at the administrative hearing. (Tr. 18.)

## II.  The ALJ's Determination

The ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019.  (Tr. 21.)  She found that Plaintiff has not engaged in substantial gainful activity during the period from her amended alleged onset date of August 16, 2018, through her date last insured of December 31, 2019.  *Id.*  Next, the ALJ concluded that Plaintiff had the following severe impairments through the date last insured: ischemic heart disease, status-post pacemaker placement, coronary artery disease, mixed connective tissue disease, fibromyalgia, and obesity.  *Id.*  The ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch, and crawl.

(Tr. 23.)

The ALJ found that, through the date last insured, Plaintiff was capable of performing her past relevant work as an assistant food service manager as it is generally performed.  (Tr. 29.)  She concluded that Plaintiff was, therefore, not under a disability from her alleged onset date through the date last insured.  (Tr. 31.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 9, 2021, the claimant was not disabled under sections 216(0) and 223(d) of the Social

Security Act through December 31, 2019, the last date insured.

*Id.*

## III.    Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.    42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).    Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.    *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).    This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."    *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).    "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."    *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's

impairments.

6.      The testimony of vocational experts when required which is
        based upon a proper hypothetical question which sets forth the
        claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted).   The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.

Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

## III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343

F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight

abnormality that would not significantly limit the claimant's physical or mental ability to do

basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary

to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical

functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2)

capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering

simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. §

416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on his ability to work."   *Page v.*

*Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

As an initial matter, the Court notes that Plaintiff's insured status is relevant in this case. Plaintiff alleged an onset of disability date of August 16, 2018.   Her insured status expired on December 31, 2019.   To be entitled to benefits under Title II, Plaintiff must demonstrate she was disabled prior to December 31, 2019.   *See* 20 C.F.R. § 404.130.   Thus, the period under consideration in this case is from August 16, 2018, through December 31, 2019.

As noted above, Plaintiff challenges the ALJ's RFC determination.   Plaintiff argues that, in assessing Plaintiff's RFC, the ALJ failed to properly consider the medical opinions and Plaintiff's fibromyalgia.   She further argues that the ALJ's decision lacks a proper evaluation of Plaintiff's subjective complaints of pain.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence.   *Casey v. Astrue*, 503 F.3d 687,

696 (8th Cir. 2007).   The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).   Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record.   *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).   The claimant has the burden to establish RFC.   *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).   The RFC need only include the limitations supported by the record.   *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).   The Court recognizes that an ALJ "may not draw upon his own inferences from medical reports."   *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).   However, the Eighth Circuit has held that the "interpretation of physicians' findings is a factual matter left to the ALJ's authority."   *Mabry*, 815 F.3d at 391 (citation omitted).

The ALJ found that Plaintiff could perform light work with the following additional limitations: she cannot climb ladders, ropes, or scaffolds; and can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.   (Tr. 23.)

### A.  Subjective Complaints

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.   20 C.F.R. § 404.1529(c); SSR 16-3p.   "The credibility[4] of a claimant's

---

[4] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character.   However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."   *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6

subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall,* 274 F.3d at 1218.   The Court must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart,* 416 F.3d 886, 889 (8th Cir. 2005).   When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.   20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue,* 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.   *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Plaintiff argues that the ALJ erred in giving weight to only one of the *Polaski* factors: the objective medical evidence.

Defendant responds that the ALJ properly found that Plaintiff's subjective complaints were not entirely consistent with the record, including the objective evidence from her examinations, her statements to her providers about her symptoms, her daily activities, and her receipt of conservative treatment.   The undersigned agrees.

The ALJ summarized Plaintiff's testimony regarding her limitations as follows, in relevant part:

> The claimant reported widespread pain.   She reported difficulty with doing
> household chores like vacuuming, cooking, cutting up vegetables, due to pain in
> her fingers from arthritis.   She also reported daily swelling in her hands and feet,

(8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

> which required her to sit down and put her feet up for 30 minutes, more than once
> a day.   The claimant reported pain with weather changes, especially during cold
> weather or when it rains.   She reported significant side effects with medications,
> including headaches, which required her to lay down.   The claimant further
> alleged dizziness in 2018, which caused trouble going down stairs and doing
> laundry.

(Tr. 24.)   The ALJ found that Plaintiff's impairments could reasonably be expected to cause the

alleged symptoms; however, her statements concerning the intensity, persistence, and limiting

effects of these symptoms are not entirely consistent with the medical and other evidence in the

record.   *Id.*

In making this determination, the ALJ first discussed the objective medical evidence.

The ALJ noted Plaintiff has an "extensive cardiac history" pre-dating the relevant period,

including congestive heart failure and myocardial infarct, which resulted in her undergoing a

pacemaker placement in 2013.   (Tr. 24.)   The ALJ indicated that in July 2018, a month prior to

her alleged onset date, Plaintiff saw Tara Rognan, D.O., for a consultative examination.   (Tr. 26,

872.)   She alleged disability due to "breathing problems, stroke, and heart problems."   (Tr.

872.)   As to her breathing problems, Plaintiff reported experiencing shortness of breath on

exertion and after walking one block.   *Id.*   Plaintiff reported a history of stroke in 2009, which

currently affects her memory.   *Id.*   As to her heart problems, Plaintiff reported current

symptoms of chest pain, numbness, shortness of breath, weakness, swelling, and fatigue.   *Id.*

She indicated that she had no chest pain at the time of the examination.   *Id.*   Plaintiff had been

out of work since December 2014, and reported her typical daily activity consists of doing things

around the house, reading, watching television, and resting.   (Tr. 873.)   She indicated that she

could only sit for 20-30 minutes, stand 30 minutes, walk one block, and lift and carry 15 pounds

occasionally.   *Id.*

On examination, Dr. Rognan described Plaintiff as obese, with a height of 4 feet, 10 inches and a weight of 194 pounds.   (Tr. 874.)   Plaintiff's cardiovascular and lung examinations were normal, showing a regular heart rate and rhythm with no murmur, rub, or gallop.   *Id.*   No edema of the extremities was noted.   *Id.*   Plaintiff's "memory was normal and concentration was good."   *Id.*   Her sensory examination was normal to light touch; her range of motion was intact; and her straight leg raise test was positive bilaterally, but Dr. Rognan noted this was due to tight hamstrings rather than lumbar back pain.   (Tr. 875.)   On musculoskeletal examination, there was no joint swelling, erythema, effusion, tenderness or deformity; Plaintiff's hands and fingers appeared normal; Dr. Rognan observed Plaintiff was able to button and unbutton a shirt, pick up and grasp a pen and write a sentence; lift, carry, and handle personal belongings; squat and rise without difficulty; rise from a sitting position without assistance; had difficulty getting up and down from the exam table; was able to walk on heels and toes with moderate difficulty; tandem walking was abnormal; Plaintiff could stand but not hop on one foot bilaterally; Plaintiff was able to dress and undress adequately well; and she was cooperative during the examination. *Id.*   Dr. Rognan diagnosed Plaintiff with history of myocardial infarction, history of coronary artery disease, history of pacemaker, history of transient ischemic attack, osteoarthritis, tight hamstrings bilaterally, and morbid obesity.   (Tr. 876.)

The ALJ next summarized the treatment notes and examination findings in the record as follows:

Plaintiff presented to internist Cami Watkins, M.D., with complaints of right shoulder pain in October 2018, but denied shortness of breath, was "well appearing," had normal cardiac findings, had clear lungs, demonstrated full range of motion of the neck, no neurologic

abnormalities were noted, she had no peripheral edema, no abnormalities of gait or strength were documented, and she did not complain about headaches.   (Tr. 26, 1593-98.)

In December 2018, Plaintiff presented to Dr. Watkins with complaints of intermittent cramping in her right thigh but noted that she could "walk okay," with no weakness and grossly intact sensation.   (Tr. 26, 1608.)   She denied chest pain, shortness of breath, wheezing, and edema, and her examination revealed intact muscle strength, no evidence of a gait abnormality, no musculoskeletal complaints, no complaints of headaches, and no cardiovascular complaints. (Tr. 26, 1608-13.)

Nine days later, Plaintiff presented to rheumatologist Mehwish Bilal, M.D., for management of a positive antinuclear antibody ("ANA") test.   (Tr. 26, 912-13.)   It was noted that Plaintiff had been diagnosed with lupus in 2013, but did not make her follow-up appointment.   (Tr. 913.)   Plaintiff complained of diffuse pain in the bilateral knees, left elbow, bilateral hands and wrists, right shoulder, neck, back, right hip, ankles, and feet; morning stiffness lasting for one hour; and on and off swelling of the hands and feet.   *Id.*   On examination, Dr. Bilal noted swelling of the bilateral hands, wrists, and knees, along with crepitus and limited range of motion of the right knee.   (Tr. 26, 915.)   She had limited external rotation of the bilateral hips, with swelling of the bilateral ankles, tenderness to palpation, and limited range of motion in the back at all directions.   *Id.*   Dr. Bilal diagnosed Plaintiff with mixed connective tissue disease and fibromyalgia with "moderate disease activity," and started her on Plaquenil[5] and Cymbalta.[6]   (Tr. 916.)

---

[5]Plaquenil is indicated for the treatment of autoimmune disorders.  *See* WebMD, http://www.webmd.com/drugs (last visited March 20, 2025).
[6] Cymbalta is indicated for the treatment of nerve pain.  *See* WebMD, http://www.webmd.com/drugs (last visited March 20, 2025).

At an April 2019 follow-up appointment, Plaintiff's complaints and physical examination remained unchanged, yet she reported she was "overall feeling better."  (Tr. 26, 906.)  Dr. Bilal found Plaintiff's symptoms improved with Plaquenil and there was currently "minimal disease activity."  (Tr. 910.)  He continued the Plaquenil.  *Id.*  Dr. Bilal offered knee injections and physical therapy for Plaintiff's osteoarthritis of the bilateral knees due to pain and swelling of the knees, but Plaintiff declined both.  *Id.*

During her May 2019 cardiology follow-up, Plaintiff reported that she "used to get chest pain with exertion in the past but has resolved now."  (Tr. 27, 902.)  She denied any chest pain for the past four to six months, and reported she experienced exertional shortness of breath only after walking half a mile.  *Id.*  Plaintiff denied any other symptoms and had no edema, lightheadedness, dizziness, or palpitations.  *Id.*  No abnormalities were noted on examination. (Tr. 27, 904.)

In a November 2019 cardiology follow-up appointment, Plaintiff "continue[d] to do well and denie[d] any chest pain or chest pressure."  (Tr. 27, 891.)  She did report exertional dyspnea, which had been stable for years.  *Id.*  Plaintiff indicated that she had undergone an echocardiogram while she was in Mexico a few months prior, which showed mild left ventricular systolic dysfunction.  *Id.*  She denied any other symptoms.  *Id.*  No abnormalities were noted on examination.  (Tr. 27, 894.)  It was noted that Plaintiff had not had "any coronary intervention for more than 5 years," and that her echocardiogram from November 2018 showed a normal ejection fraction.  *Id.*  Due to the low ejection fraction noted in Mexico, a repeat echocardiogram was ordered.  *Id.*

Plaintiff saw Dr. Bilal for a rheumatology follow-up on November 26, 2019.  (Tr. 27, 895.)  She complained of diffuse pain throughout her body, along with morning stiffness, and

intermittent swelling of the hands and feet.   (Tr. 27, 895.)   Plaintiff reported that Plaquenil

"helped a lot" in the beginning but was getting worse "for the last few weeks." (Tr. 899.)   On

examination, Dr. Bilal noted swelling of the bilateral hands and wrists, bilateral knee crepitus

with limited range of motion of the right knee, limited exertional rotation of the bilateral hips,

swelling of the bilateral ankles with tenderness to palpation, and limited range of motion of the

back in all directions.   (Tr. 27, 897.)   Dr. Bilal adjusted Plaintiff's medications.   (Tr. 899.)   He

again offered knee injections and physical therapy for Plaintiff's osteoarthritis of the bilateral

knees, but Plaintiff declined.   *Id.*

On December 27, 2019, days prior to her date last insured, Plaintiff presented to her

primary care provider with complaints of red marks on her fingers for three to four days.   (Tr.

27, 886.)   She denied having any pain, numbness, or tingling.   *Id.*   On examination, Plaintiff

had no hand redness.   *Id.*   No abnormalities were noted on Plaintiff's lung, heart, or extremity

exams.   *Id.*   It was noted that Plaintiff had a "steady gait," and full range of motion.   *Id.*

Plaintiff was instructed to take a picture if the hand redness occurred again.   (Tr. 890.)

The ALJ found that the objective medical evidence was not consistent with Plaintiff's

allegations of disabling pain.   This finding is supported by the ALJ's discussion of the medical

record as summarized above.   Significantly, despite Plaintiff's allegations of disability due to

heart-related issues and alleged symptoms of dizziness and shortness of breath, Plaintiff's

cardiac examinations were consistently normal during the relevant period and the record notes no

complaints of dizziness.   (Tr. 874, 893, 897, 900, 904, 911, 1596, 1611.)   It was noted that she

had had "no coronary intervention for five years."   (Tr. 894.)   Plaintiff denied shortness of

breath other than reporting shortness of breath after walking a half mile or more at a May 2019

cardiology appointment.   (Tr. 902.)   As to Plaintiff's connective tissue disease and

fibromyalgia, Plaintiff's rheumatologist noted swelling in Plaintiff's ankles and hands, and reduced range of motion in her right knee, hips, and back, but she did not note any difficulties with gait, strength, or sensation.   (Tr. 897, 906-08, 915, 939-40, 942-45.)   Other examinations revealed Plaintiff had a normal or sturdy gait; full range of motion in her ankles, extremities, shoulders, hips, and back; and intact sensation and full strength in her extremities.   (Tr. 874-78, 889, 893, 904, 926, 928, 1596, 1610-11.)   With regard to Plaintiff's testimony that she has difficulty using her hands due to numbness and weakness, it was noted during Plaintiff's July 2018 consultative examination that Plaintiff had full range of motion in her wrists and full grip strength.   (Tr. 877.)   Additionally, Plaintiff was able to button and unbutton her shirt, pick up and grasp a pen, write a sentence, and handle her personal belongings.   (Tr. 875.)

Although the absence of objective medical evidence is not dispositive of whether a claimant suffers from subjective complaints, the ALJ can consider the absence of objective medical evidence supporting the claimed impairments.   *Ramirez v. Barnhart,* 292 F.3d 576, 581 (8th Cir. 2002) (internal citation omitted) (Although "an ALJ may not disregard [a claimant's] subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary.").   Here, the ALJ properly considered that Plaintiff's subjective complaints of disabling pain and limitations were not supported by the objective medical evidence.

The ALJ next considered Plaintiff's daily activities.   Plaintiff testified that, during the relevant period, she was able to complete household chores, although it took her longer due to pain; she drove about every other day; and she traveled to Mexico approximately once a year to help her parents when her father was sick.   (Tr. 29, 385, 400-02.)   Plaintiff also reported

babysitting three children when they did not have school, although she could not identify the precise time frame during which this occurred.   (Tr. 401-02.)   The ALJ stated that Plaintiff's activities of travelling to Mexico with some frequency and babysitting three children during the relevant period were inconsistent with her subjective complaints.   (Tr. 29.)   Plaintiff disputes that her travel to Mexico is inconsistent with her allegation of disability, and argues that the baby-sitting noted by the ALJ occurred prior to her amended onset of disability date.

"Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints."   *Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016); *see also Wright v. Colvin,* 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain); *Roberson v. Astrue,* 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money).

Here, the ALJ reasonably found that Plaintiff's ability to travel internationally is inconsistent with her allegations of disability.   Notably, Plaintiff testified that she is only able to sit for 20 to 30 minutes at a time, and needs to elevate her legs for 30 minutes multiple times a day.   Her ability to fly to Mexico on a regular basis to help care for her parents as she testified during the hearing is inconsistent with these allegations.   (Tr. 400.)   At the hearing, Plaintiff expressed uncertainty of the timeframe during which she provided care for the three children. (Tr. 402.)   Even if this testimony is not considered, however, the ALJ provided sufficient other reasons for finding her allegations of disability inconsistent with the record.

The ALJ also discussed Plaintiff's medications, noting that Dr. Bilal found her symptoms had improved with medication in April 2019 and that she had only "minimal disease activity." (Tr. 910.)   Further, at the same visit, Dr. Bilal offered Plaintiff knee injections and physical therapy for her bilateral knee osteoarthritis but Plaintiff declined.   *Id.*   Plaintiff declined these recommended treatment options again in November 2019.   (Tr. 899.)   A plaintiff's choice to decline medical recommendations or prescribed treatments may be considered for various reasons, including the credibility of subjective complaints.   *See, e.g., Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (discrediting claimant's subjective complaints due to her noncompliance with prescribed diet and medications).   Improvement with treatment is also another consideration an ALJ may consider.   *See King v. Berryhill*, No. 4:17-CV-2512-ERW, 2019 WL 1129971, at *6 (E.D. Mo. Mar. 12, 2019) (ALJ may evaluate plaintiff's improvement with treatment in analyzing the credibility of subjective complaints of pain).

Finally, the ALJ identified some inconsistencies between Plaintiff's testimony and the statements she made to providers.   For example, Plaintiff testified at the hearing that she had dizziness, fatigue, and shortness of breath "all the time" during the relevant period.   (Tr. 391-92, 396.)   Despite this testimony, Plaintiff frequently denied having any such symptoms.   (Tr. 26, 891, 902, 1595, 1610.)   At her December 2019 visit with Dr. Bilal, Plaintiff denied having any pain, numbness, or tingling in her fingers, whereas she testified at the hearing that she has weakness and reduced sensation in her hands.   (Tr. 27, 395-96, 886.)

Thus, although Plaintiff alleges the ALJ only discussed the objective medical evidence in discrediting her subjective pain complaints, the record shows that the ALJ also considered Plaintiff's activities, improvement with treatment, inconsistent statements, and decision to decline recommended treatment for pain relief.   The Court "'will not disturb the decision of an

ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain.'"   *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (quoting *Gowell v. Apfel,* 242 F.3d 793, 796 (8th Cir. 2001)); *see also Pearsall,* 274 F.3d at 1218 ("The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.").   In this case, the ALJ properly considered Plaintiff's subjective complaints but found they were not entirely consistent with the record.   This determination is supported by substantial evidence.

**B.  Opinion Evidence**

Plaintiff next argues that the ALJ failed to properly consider the medical opinions.   Specifically, she contends that the ALJ erred in relying on the outdated opinions of state agency physicians and failing to adequately explain how the supportability and consistency factors were considered.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.   This provision states the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.   20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be."   *Id.*   An ALJ may, but is not required to, explain how he or she considered the remaining factors.   *Id. See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (Quoting § 404.1520c(a), (b), alterations omitted).   An ALJ must articulate how persuasive she found all medical opinions and prior administrative medical findings in a claimant's case record. § 404.1520c(b).

Plaintiff takes issue with the ALJ's evaluation of the prior administrative findings of Daniel Gwartney, M.D., and Steven Fishburn, M.D.   On July 26, 2021, Dr. Gwartney summarized medical records from the relevant period and expressed the opinion that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds; sit about 6 hours in an 8-hour workday; stand or walk about 6 hours in an 8-hour workday; push and pull an unlimited amount in the upper and lower extremities; and had no postural, manipulative, visual, communicative, or environmental limitations.   (Tr. 428.)   Dr. Gwartney noted that Plaintiff's complaints prior to her date last insured were restricted to her knees, back, and feet, and that she

had no complaints or treatment for hand pain during the relevant period.   (Tr. 429.)   On December 11, 2021, Dr. Fishburn found the same limitations as Dr. Gwartney.   (Tr. 435.)

The ALJ indicated that she was "generally persuaded" by the opinions of Drs. Gwartney and Fishburn, "who found that the claimant could perform a full range of light work."   (Tr. 28.) She stated that their opinions were consistent with the medical record and Plaintiff's impairments of obesity, generalized pain, and reports of shortness of breath.   *Id.*   The ALJ noted that their opinions were also supported by the explanations provided, notably that Plaintiff retained a normal gait and full strength throughout the entire relevant period.   *Id.*   The ALJ, however, stated that "given the later assessment of mixed connective tissue disease and fibromyalgia, additional postural limitations are warranted, as set forth in the above residual functional capacity."   *Id.*

The undersigned finds that the ALJ's analysis was entirely consistent with the requirements of SSR 96-8p and other applicable regulations.   The ALJ adequately evaluated the persuasiveness of the state agency physicians' opinions by discussing the supportability and consistency of the evidence.   She pointed to specific evidence cited by Drs. Gwartney and Fishburn in their narrative explanations—Plaintiff's normal gait and full strength throughout the relevant period—that supported their opinion that Plaintiff could perform light work.   The ALJ found that the opinions were consistent with the record with regard to Plaintiff's obesity, generalized pain, and heart impairment.

The ALJ acknowledged that the opinions did not consider later-obtained rheumatology records of Plaintiff's diagnosis and treatment of mixed connective tissue disease and fibromyalgia.   For this reason, the ALJ did not adopt the opinions of Drs. Gwartney and Fishburn but, instead, included additional postural limitations to account for these conditions.

### C.  RFC Determination

Plaintiff argues that the ALJ failed to fully and fairly develop the record, because the record does not contain medical evidence that addresses Plaintiff's ability to function in the workplace given the findings noted by her rheumatologist.

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision.   *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Moreover, it is ultimately Plaintiff's burden to establish her RFC, and she failed to carry this burden by producing any evidence that her RFC should be more limited because of her connective tissue disease or fibromyalgia.   *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

In a closely related argument, Plaintiff contends that the ALJ erred in failing to properly evaluate Plaintiff's fibromyalgia.   Contrary to Plaintiff's argument, the ALJ specifically found that Plaintiff's fibromyalgia was a severe impairment and then incorporated additional postural limitations in Plaintiff's RFC to account for the symptoms caused by her fibromyalgia and mixed connective tissue disease.   For the reasons set out below, the ALJ's RFC determination is supported by substantial evidence and Plaintiff's argument that the ALJ failed to properly evaluate her fibromyalgia lacks merit.

The ALJ relied on the objective medical evidence of record, which she specifically considered and factored into her evaluation of Plaintiff's RFC.   To account for Plaintiff's credible limitations with respect to all of her severe impairments, the ALJ limited Plaintiff to a reduced range of light work.   These limitations are consistent with her conservative treatment, controlled cardiac impairments, and numerous examinations which yielded normal (or at most

slightly abnormal) results.   Although Dr. Bilal noted pain and swelling of the hands related to Plaintiff's mixed connective disease and fibromyalgia, Dr. Rognan found that Plaintiff was able to button and unbutton a shirt, dress and undress, pick up and grasp a pen, and write.   (Tr. 875.) Neither Dr. Bilal nor any other examiner noted any difficulties with gait, strength, or sensation despite the pain or swelling in Plaintiff's ankles.   The ALJ considered the opinion of the state agency physicians that Plaintiff could perform the full range of light work, along with the findings of Drs. Bilal and Rognan, and formulated an RFC not identical to any of the opinions. That is precisely the role of the ALJ.

The new regulations permit the ALJ to consider medical source evidence as appropriate. 20 C.F.R. § 416.920a(b)(1) (2017).   Ultimately, "the interpretation of physicians' findings is a factual matter left to the ALJ's authority."  *Mabry*, 815 F.3d at 391.   Although Plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not this Court's role to reweigh the medical evidence of Plaintiff's limitations considered by the ALJ in her determination of Plaintiff's RFC.   *Hensley*, 829 F.3d at 934.

The Court finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.   Under these circumstances, the ALJ was not required to further develop the record.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2025.